STATE of Iowa, Appellant,

v.

Mary Catherine WEAVER, Appellee.

No. 94–834.

Supreme Court of Iowa.

Sept. 18, 1996.

Thomas J. Miller, Attorney General, Doug Marek, Deputy Attorney General, and Julie H. Brown and Virginia Barchman, Assistant Attorneys General, for appellant.

Paul Rosenberg of Paul Rosenberg & Associates, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, TERNUS, and SCHULTZ,* JJ.

McGIVERIN, Chief Justice.

Consolidated appeals come to us involving: (1) a direct appeal by the State of the district court's latest decision on remand to grant defendant's second motion for new trial; and (2) an appeal and application for further review by defendant from an earlier court of appeals decision affirming her convictions for murder in the first degree and child endangerment.

We affirm on the State's appeal of the district court's ruling granting defendant a new trial. Therefore, we dismiss the defendant's appeal and application for further review as moot.

I. *Background facts and proceedings.* On January 23, 1993, eleven-month-old Melissa Mathes died after suffering respiratory arrest while in the care of her babysitter, defendant Mary Weaver. At approximately 11:14 a.m. on January 22 (the day preceding Melissa's death), defendant telephoned 911 and reported that Melissa was not breathing. Melissa had been placed by her mother, Tessia Mathes, in the care of the defendant at approximately 10:20 that morning. The autopsy results showed Melissa had both old and recent (acute) injuries including a "skull fracture, subdural hematoma, bleeding in the brain, [and] *bilateral retinal hemorrhages,* which were consistent with shaken baby syndrome." (Emphasis added.)

---

* Senior Judge assigned by order pursuant to Iowa Code section 602.9206 (1995).

Dr. Robert Robinson, who performed the autopsy with assistance by Dr. Robert Folberg and Dr. Robert Schelper, estimated Melissa's skull fracture to be seven to ten days old. Others opined that it was possible the skull fracture was only five days old. Dr. Robinson estimated that the subdural hemorrhage detected during the autopsy was one to two weeks old, the sagittal sinus thrombus (blood clot in the brain) was estimated to be seven to ten days old, and necrosis (cell death in the brain) was estimated to be seven to ten days old.

In regard to acute injuries, the autopsy showed Melissa had suffered from diffuse subarachnoid hemorrhage, contusion (frontal cortex), bilateral retinal hemorrhage, and bilateral anterior chamber hemorrhage. The autopsy also led the examining physicians to conclude the acute conditions preceding Melissa's death would have been nonsubtle and immediate and that they occurred shortly before she was admitted into Marshalltown Hospital in response to the defendant's 911 telephone call.[1]

After Melissa's death, the State charged defendant with murder in the first degree, *see* Iowa Code § 707.2(2) (1993), and child endangerment, *see id.* § 726.6(1)(b). Defendant waived her right to a jury trial and the case was tried to the court.

On March 22, 1994, the district court, Judge Carl E. Peterson, convicted defendant of both charges. After entry of the verdict but prior to sentencing, defendant filed her first motion for a new trial based on alleged newly-discovered evidence.[2] *See* Iowa R.Crim.P. 23(2)(b)(8). Following a hearing, that motion was denied.[3]

Next, the court sentenced defendant on both charges based on the verdict. Defendant appealed the judgment of conviction and we transferred the case to the court of appeals. On direct appeal, defendant raised three contentions: (1) that the district court abused its discretion in failing to grant a new trial based on the newly-discovered evidence contained in the affidavits of two witnesses (McElroy and Lovig); (2) that there was insufficient evidence to support defendant's convictions; and (3) that the district court abused its discretion in excluding evidence of an alleged conversation between Melissa's mother, Tessia, and a Kimberly Smuck. After considering defendant's contentions, the court of appeals affirmed defendant's convictions.

Defendant sought further review of the court of appeals decision. Defendant also filed a motion for limited remand for the purpose of filing in the district court a *second* motion for a new trial based on additional alleged newly-discovered evidence. We granted defendant's application for further review *and* the motion for limited remand.

Pursuant to our order and pending resolution of the application for further review, the case was remanded to the district court to determine the merits of defendant's *second* motion for a new trial based on alleged newly-discovered evidence. As in defendant's initial motion for a new trial, defendant claimed in her second motion filed in district court that after the verdict was entered three

---

**1.** On January 19, 20, and 21, just days prior to Melissa's death, Tessia Mathes (Melissa's mother) had taken Melissa to see her pediatrician complaining of frequent vomiting spells. The pediatrician concluded Melissa had gastroenteritis, for which she was given an over-the-counter oral medication called Pedialyte to combat resulting dehydration.

**2.** Defendant's first motion for a new trial was based on alleged newly-discovered evidence in the form of two affidavits. The affiants, Robin McElroy and Mistry Lovig, purportedly did not know each other prior to the trial. McElroy claimed Melissa's mother Tessia had told her that the defendant had not hurt Melissa. According to the affidavits, dated April 8, 1994, and April 21, 1994, respectively, Tessia expressed her

belief to McElroy and Lovig that Melissa was hurt because, on the morning defendant arrived to pick up Melissa to babysit her, Melissa had hit her head on a coffee table at the Mathes home.

The affiants did *not* state that Tessia told either of them that Melissa had been knocked unconscious after hitting her head on the coffee table.

**3.** Judge Peterson, the trial judge, issued a written ruling denying defendant's first motion for a new trial. The court concluded the two affidavits presented by defendant represented hearsay evidence, the hearsay statements did not have equivalent circumstantial guarantees of trustworthiness, the hearsay statements did not impeach Tessia's testimony at trial, and admission of the hearsay statements would not "probably" change the result of the court's verdict.

new witnesses came forward with evidence concerning an alleged incident that purportedly occurred within one hour before Melissa's respiratory arrest. The three new witnesses, Evelyn Braack, Flossie Wall, and Elaine Kail, claimed that following Melissa's death, they had a conversation with Tessia Mathes during which Tessia stated that, while she was dressing Melissa in her snowsuit, Melissa accidentally hit her head on a coffee table. Wall and Kail claim Tessia further stated that Melissa was knocked unconscious during the incident.

Unlike the affidavits of Robin McElroy and Mistry Lovig relied on in the first motion for new trial, the affidavits of two of the new witnesses, Wall and Kail, refer to the trauma causing unconsciousness in Melissa. Defendant admits that, as asserted by the State, the affidavits and any statements Tessia may have made to the three women constitute hearsay statements. Defendant contends, however, that the hearsay statements were admissible for various reasons including compliance with Iowa rule of evidence 803(24). Defendant also contends that these affidavits impeach Tessia's trial testimony and statements to police investigators that Melissa fell off her "cookie monster" chair and suffered no significant trauma just prior to being transferred to defendant's care on January 22, 1993.[4]

The State filed a resistance to defendant's second motion for new trial. In its resistance, the State contended that the affidavits and proposed testimony represented inadmissible hearsay, the evidence was merely cumulative or impeaching, and admission of the evidence probably would not change the result of the trial.

A hearing was held on defendant's motion before district court Judge Allan L. Goode. In contrast to Judge Peterson's ruling denying defendant's first motion for new trial, Judge Goode granted defendant's second motion for new trial. At the hearing on the second motion for new trial, the defendant called only one of her medical experts who testified at trial, Dr. Rose, to give an opinion

concerning the significance of the newly-discovered evidence. Defendant also called a medical expert, Dr. Brian Blackbourne, who did not testify at defendant's trial, to give his opinion on the relevance and materiality of the new evidence. The court summarized defendant's experts' evaluation of the significance of the new witnesses' statements in relation to the cause of Melissa's death as follows:

> In substance, both experts agree that Melissa's vulnerable neurological state on the morning of January 22nd [due to the alleged fall from the cookie monster chair or the alleged coffee table incident on January 22, 1993], *coupled with the trauma described by the new witnesses,* offers a reasonable medical explanation of the acute conditions that precipitated the respiratory arrest and ultimate death.

> . . . .

> Dr. Blackbourne state[d] that the organizing subdural hematoma, sagittal sinus thrombosis and parietooccipital lobe necrosis would [have] increase[d] the severity of a subsequent injury from striking the head on a coffee table by increased bleeding and edema. He believe[d] that the recent injuries [were] consistent with a blunt trauma injury from the head striking a fixed object, causing a contra coup frontal contusion and producing the subarachnoid hemorrhage.

> . . . .

> Defendant's experts testified that the contusion on the back of the head [left occiput] is consistent with and corroborates the episode of trauma described by the three affiants. The autopsy report describes the bruise as "a 1.5 × 1.0 cm raised blue contusion with ill-defined borders on the scalp of the left occiput."

(Emphasis added.) The court recognized, however, that Melissa's retinal bleeding identified at the autopsy could not be attributed to the alleged striking of her head on a coffee table while in the care of her mother:

---

4. According to Tessia Mathes, Melissa fell off her cookie monster chair and hit her head on the footrest of a lazy-boy recliner on January 22,

1993, prior to the time the defendant picked her up for babysitting.

... Dr. Blackbourne concedes that the [alleged] trauma doesn't explain everything that was observed at the autopsy, such as certain bleeding of the eyes. At the time of trial, the evidence indicated that the traumatic angle recision and anterior chamber hemorrhages, which are not usually associated with shaken baby syndrome, were the result of an unexplained direct trauma. Dr. Blackbourne acknowledges that the bilateral retinal hemorrhages are not well explained.

In its ruling, the court also summarized the testimony of the State's expert witnesses concerning the significance of the new evidence:

They all testified that the new evidence does not change their prior opinions [that defendant's actions caused the death of Melissa]. In their judgment, the blunt trauma would not explain some of the findings at autopsy, and they continue to disagree with the opinion of Dr. Rose regarding a rebleed of the subdural hemorrhage and the cause of death.

According to their testimony, the description that Melissa was acting normal when the defendant picked her up [from Tessia's house] is incompatible with a lethal head trauma. Although Dr. Smith agrees with the general proposition that a head trauma and unconsciousness can be followed by a period of lucidity, depending on the degree of trauma, he states that the child would not appear normal to a parent or regular child care provider. He believes that the symptoms from the subarachnoid hemorrhage would appear very rapidly.

The prosecution experts testified that the bilateral retinal hemorrhages, which are commonly associated with shaken baby syndrome, are of particular significance.

After considering the affidavits, the affiants' testimony, and the expert witnesses' testimony, the court (Judge Goode) granted defendant's second motion for a new trial. In its ruling, the court concluded the newly-discovered evidence was hearsay admissible under Iowa rule of evidence 803(24). The court stated the affiants were "very credible" and had no apparent reason to fabricate the incident alleged in their affidavits. Furthermore, the court concluded, any discrepancies in the affiants' recollections of their conversation with Tessia concerning the death of her child were not substantial.

The court recognized that the newly-discovered evidence was inconsistent with the parties' stipulation that Tessia denied that the trauma occurred. As the court recognized, this fact, however, is not in and of itself enough to support a grant of a new trial. *See State v. Miles*, 490 N.W.2d 798, 799 (Iowa 1992). The evidence, in the court's view, served a greater purpose than that of impeachment:

It's offered as substantive evidence to establish that a significant trauma did in fact occur, which is related to the cause of death.

We first address the State's appeal and whether the district court on remand abused its discretion in granting defendant's second motion for new trial based on newly-discovered evidence.

II. *Standard of review.* We review a district court's denial or grant of a motion for new trial on the basis of newly-discovered evidence for abuse of discretion. *See State v. Romeo*, 542 N.W.2d 543, 551 (Iowa 1996). "We find an abuse of discretion only when discretion is exercised on grounds clearly untenable or to an extent clearly unreasonable." *Preferred Mktg. Assocs. Co. v. Hawkeye Nat'l Life Ins. Co.*, 452 N.W.2d 389, 393 (Iowa 1990) (citation omitted). In the present posture of the State's appeal, the State bears this burden to establish the district court abused its discretion in granting defendant a new trial. *See State v. Belt*, 505 N.W.2d 182, 184 (Iowa 1993); *State v. Holland*, 485 N.W.2d 652, 655 (Iowa 1992); *State v. Lindsey*, 302 N.W.2d 98, 101 (Iowa 1981). The court's discretion in granting or denying a motion for new trial is "unusually broad" when the new trial motion is grounded on newly-discovered evidence. *Miles*, 490 N.W.2d at 799.

We give weight to the district court's conclusion that the proffered newly-discovered evidence would have altered the trier-of-fact's decision to convict had the evi-

dence been introduced at trial. *Id.* At the same time, we recognize that motions for new trial are not favored and should be closely scrutinized and sparingly granted. *State v. Overstreet,* 243 N.W.2d 880, 886 (Iowa 1976). We are more reluctant to disturb a trial court's grant of a new trial than its denial of one. *Dubuque Area Chamber of Commerce v. Adams,* 225 N.W.2d 147, 149 (Iowa 1975).

█ We note that a judge other than the one presiding at trial acted upon defendant's second motion for new trial. The trial judge and trier-of-fact, Judge Peterson, did not rule on that motion, and second judicial district Chief Judge Ronald H. Schechtman specially assigned Judge Goode to conduct the hearing on the motion.[5] Such circumstances do not warrant curtailment of the substantial deference accorded the district court in passing on a motion for new trial, but they do confine the second judge's inquiry to the record before him. *In re Primary Road No. Iowa 141,* 255 Iowa 711, 725, 124 N.W.2d 141, 149 (1963). Here, Judge Goode stated he prepared for the hearing on the motion by "carefully review[ing] the complete court file, trial transcript and exhibits." In addition, he had the benefit of observing the live testimony of Braack, Wall, and Kail at the hearing, where he stated he "carefully scrutinized the credibility of the witnesses . . . against the backdrop of the trial record." Judge Goode's familiarity with the trial record and firsthand knowledge of the new witnesses' credibility entitle his ruling to considerable deference on review.[6]

**5.** Chief Judge Schechtman gave the following reasons for the special assignment:

Due to the nature and circumstances of the limited remand, the nature of the motion, the fact that the original trial court was the factfinder, without a jury, and the availability of a complete transcript of the trial, the undersigned concludes that the matter warrants the assignment of a special judge, who has not been a previous trial court herein, to hear the merits of the motion for new trial. Counsel for each of the parties, as well as the defendant, have no objection to this administrative assignment.

**6.** We are aware of earlier cases in which we expressed some misgiving over the passing on a motion for new trial by a judge who did not try the case. *See In re Primary Road No. Iowa 141,*

**III.** *Appeal by State of the district court's grant of defendant's second motion for new trial.* The State appeals from the grant of a new trial to defendant. If we find the district court did not abuse its discretion in granting defendant's second motion for new trial, the issues raised by defendant on further review of the court of appeals decision affirming defendant's convictions would be moot. If, on the other hand, we find the district court did abuse its discretion in granting defendant's second motion for a new trial, then we must consider the merits of defendant's appeal from her convictions for murder in the first degree and child endangerment.

**A.** *Basis for motion for new trial.* Pursuant to Iowa Rule of Criminal Procedure 23(2)(b)(8), defendant filed her second request for a new trial based on alleged newly-discovered evidence. *See* Iowa R.Crim.P. 23(2)(b)(8). That rule provides as follows:

b. *Grounds.* The court may grant a new trial for any or all of the following causes:

. . . .

(8) When the defendant has discovered important and material evidence in his or her favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at the trial. . . . When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affida-

255 Iowa at 725–26, 124 N.W.2d at 150 (finding it was an abuse of discretion for the second judge to overrule a motion for new trial where his ruling consisted of only two lines and gave no indication of any consideration given to the motion); *Eller v. Paul Revere Life Ins. Co.,* 230 Iowa 1255, 1261–63, 300 N.W. 535, 538–39 (1941) (reversing the second judge's grant of a new trial because the alleged new evidence was cumulative and not newly discovered and commenting that the discretion given to trial courts in ruling on motions for new trial is based on the knowledge gained by the trial courts during trial). However, Judge Goode's recitations regarding his review of the trial record persuade us that he carefully considered all matters brought out at trial before Judge Peterson.

vits or testimony of the witnesses by whom such evidence is expected to be given. . . .

Iowa R.Crim.P. 23(2)(b)(8).

In order to be granted a new trial under this rule, Weaver must show (1) it was not until after the verdict that she discovered that Melissa had allegedly hit her head on a coffee table and been knocked unconscious, (2) she could not have discovered that evidence earlier in the exercise of reasonable diligence, (3) that evidence is material to the issues in the case and not merely cumulative or impeaching, and (4) that evidence probably would have changed the result of the trial in which defendant was convicted of murder in the first degree and child endangerment. *See Romeo,* 542 N.W.2d at 550. The State contends the affidavits and the substance of the affiants' testimony are hearsay and that the district court abused its discretion in finding that defendant was able to satisfy the fourth prong of this test. Therefore, we assume for purposes of the State's appeal that defendant has satisfied the first three prongs of the test.

B. *Defendant's newly-discovered evidence to support second motion for new trial.* Defendant's second motion for new trial is based solely on affidavits from three affiants who came forward nearly three years after Melissa's death (and one and one-half years after defendant's convictions) with new evidence material to issues surrounding defendant's convictions. The present three affiants, all Marshalltown residents, are (1) Evelyn Braack, age sixty-eight; (2) Flossie Wall, age sixty-seven; and (3) Elaine Kail, age sixty-eight. The three affiants regularly have coffee at the restaurant where Tessia worked at the time of Melissa's death. Pertinent excerpts from their handwritten affidavits at issue in the present appeal are set out below:

*Evelyn Braack* 10/20/95

Some friends of ours and my husband and I have coffee every Wednesday afternoon around 2:30 p.m. at Hardees in Marshalltown. The women sit together and the men do the same. We knew Tessia Mathes as she worked there. Shortly after the baby died (2–3 weeks) Tessia told the women present that she had been putting on the baby's snowsuit and she had thrown her head back and hit her head on a table injuring her head but she did not say how bad. . . .

*Flossie Wall* 10/24/95

My husband and I meet at Hardees every Wednesday for coffee with several couples. Tessia Mathes worked there. Shortly after her baby died and was buried she came back to work and came over to talk to us. She told us that one morning as she was dressing the baby to leave the house she was putting on the baby's snowsuit, [the baby] was fussing and moving around. The baby hit her head on the coffee table and was knocked unconscious. . . .

*Elaine Kail* 10/20/95

Several friends including our husbands meet on Wednesday afternoons at about 2:30 p.m. at Hardees. A short time after the baby died, her mother Tessia told myself and Evelyn Braack, Flossie Wall, Donna Parsons, that one morning as she was dressing Melissa, the baby had hit her head on the coffee table. She did not elaborate any further.

. . . .

*Elaine Kail* 10/24/95

This statement in addition to the statement I provided on October 20, 1995. That night I thought about this further and remembered that Tessia had told us the baby had went limp after she had hit her head on the coffee table and became unconscious. My impression was that Tessia was telling us how the baby had died. It was my impression that the baby struck her head on the coffee [table] on the morning that she died.[7]

In response to the proffered affidavits, the parties stipulated that, if called as a witness, Tessia would testify that

her daughter Melissa Mathes neither struck her head against a coffee table on

---

**7.** The district court concluded it was reasonable to assume that, although the affidavit does not pinpoint a time or date the alleged incident occurred, the incident occurred on January 22, 1993, at some time prior to the time defendant picked up Melissa.

the morning of January 22, 1993, nor did she ever lose consciousness for any reason while in Tessia's care. Further, she would testify that she has never described to Wall, [K]ail or Braack a fall by Melissa on the morning of January 22, 1993 against a coffee table which would have resulted in a loss of consciousness by Melissa.

The State and defendant agree that the affidavits by Braack, Wall, and Kail are hearsay. Whether the affidavits and testimony therefrom constitute admissible hearsay is in dispute. Over the State's hearsay objections, the court considered the affidavits admissible hearsay pursuant to one of the two residual exceptions to the hearsay rule, Iowa rule of evidence 803(24), which provides in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(24) **Other Exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

■ This exception to the hearsay rule is to be used "very rarely, and only in exceptional circumstances" to justify the admission of hearsay evidence. *State v. Brown,* 341 N.W.2d 10, 14 (Iowa 1983) (quoting 28 U.S.C.A. Rule 803, Historical Note at 583). Before hearsay evidence can be admitted

pursuant to rule 803(24), the district court must make five findings concerning the nature of the evidence: (1) trustworthiness; (2) materiality; (3) necessity; (4) notice; and (5) service of the interests of justice. *State v. Rojas,* 524 N.W.2d 659, 662–63 (Iowa 1994) *cert. denied,* —— U.S. ——, 115 S.Ct. 1981, 131 L.Ed.2d 869 (1995); *Brown,* 341 N.W.2d at 14. As the above criteria are set forth in the conjunctive, the failure to satisfy one requirement precludes admission of the evidence.

■ The district court in the present case made specific findings on each of the above relevant criteria. *See Brown,* 341 N.W.2d at 14 (requirement for hearsay evidence to be admissible under rule 803(24) is that the district court must make specific findings on the record regarding trustworthiness, materiality, necessity, notice, and service of the interests of justice). The court has broad discretion in deciding evidentiary issues, including admissibility of hearsay evidence under rule 803(24). *United States v. Cree,* 778 F.2d 474, 477 (8th Cir.1985).[8] We generally review the admissibility of evidence under Iowa rule of evidence 803(24) for abuse of discretion. Thus, we must determine whether the district court abused its discretion in admitting the evidence.

On appeal, the State contends that the information provided in the affidavits was not reliable[9], and therefore the affidavits and testimony are not admissible under rule 803(24). In the alternative, the State contends there is no possible way that the affidavits and testimony therefrom presented by defendant would "probably" change the result of the trial in which defendant was convicted of murder in the first degree and child endangerment.

---

8. In interpreting Iowa rule of evidence 803(24) under a given set of facts, we are not bound by federal courts' interpretations of similar federal rules under similar circumstances. *See State v. Johnson,* 539 N.W.2d 160, 164 (Iowa 1995). However, we give considerable weight to an interpretation of a federal rule of evidence after which Iowa has patterned its rule. *Id.* at 165; *Brunner v. Brown,* 480 N.W.2d 33, 35 (Iowa 1992). Although there is no 1983 committee comment on the adoption of Iowa rule of evi-

dence 803(24), like a majority of the other rules, it appears Iowa patterned its rule after federal rule of evidence 803(24).

9. "Reliability" is not one of the rule 803(24) criteria. The State must link reliability to trustworthiness or one of the other criteria in order to prove abuse of discretion in admitting the evidence.

After a careful consideration of the record in this matter including the findings of the district court, we believe the court did not abuse its discretion in ruling that the affidavits and testimony of Braack, Wall and Kail at the hearing on the motion were admissible hearsay evidence. Therefore, the district court properly considered that evidence in ruling on defendant's second motion for new trial.[10]

■ As the State contests only the trustworthiness prong of admissibility under Iowa rule of evidence 803(24), we consider the merits of that factor only and deem the other factors waived in the State's appeal. *See* Iowa R.App.P. 14(a)(3).

In order for hearsay evidence to be admissible under Iowa rule of evidence 803(24), it must first be found by the court to be trustworthy. The district court believed this criterion was met. We agree.

■ Factors to consider in making a trustworthiness determination under rule 803(24) include: the declarant's (Tessia Mathes') propensity to tell the truth, whether the alleged statements by Tessia Mathes were made under oath, assurance of Tessia Mathes' personal knowledge, the time lapse between the alleged event and the statement by Tessia Mathes concerning the event, and the motivations of Tessia Mathes to make the alleged statements. Additional circumstances to consider include corroboration, reaffirming or recanting the statement by the declarant, credibility of the witness reporting the statement, and availability of the declarant for cross-examination. 7 James A. Adams & Kasey W. Kincaid, *Iowa Practice— Evidence* 463–64 (1988); 2 Kenneth Broun et al., *McCormick on Evidence* § 324, at 363–65 (John W. Strong ed., 4th ed. 1992).[11]

In concluding that the affidavits and testimony were trustworthy for purposes of admissibility under rule 803(24), the district court made the following findings based on the facts and trustworthiness factors to be considered:

1. The witnesses reporting the statement are very credible.

2. The declarant, Tessia Mathes, is available to testify.

3. The statement was made shortly after the incident in close proximity to events the declarant could be expected to remember.

4. The declarant had firsthand knowledge of the substance of the statement and was not relying on potentially erroneous secondary information.

5. The statement was unambiguous and explicit that the event occurred.

6. The statement was in response to an open-ended question, and was not the result of interrogation or investigation by the accused or others on her behalf.

7. The statement was made to more than one person, who agree on the substance of what was said.

8. A similar account of the episode of trauma was made on other separate occasions.

9. The statement is corroborated by objective medical evidence showing a contusion on the left occiput which has not been otherwise explained.

In addition to the above findings, several other facts convince us that the affidavits and testimony were sufficiently trustworthy to constitute admissible hearsay under Iowa rule of evidence 803(24) under this record. The three affiants were acquaintances of Tessia Mathes, the declarant, only through her employment at Hardees. The affiants did not socialize with Tessia Mathes and only saw and spoke to her when they would go to Hardees for coffee with their friends. None of the affiants are alleged to have had a personal vendetta against Tessia Mathes and, perhaps more importantly, none of the affiants personally knew the defendant.

---

10. In retrial on the merits, the evidence of the witnesses Braack, Wall, and Kail must be offered in the usual way, will be subject to objection anew, and must be ruled on by the court as to admissibility. The affidavits alone of those witnesses would not be admissible at trial without agreement of both the State and the defendant.

11. We do not believe the above factors are an exclusive list to be considered in any one given trustworthiness analysis.

In opposition to the above findings, the State asserts the information provided in the affidavits is not trustworthy for several reasons, including: (1) the passage of time, nearly three years from the time Tessia Mathes allegedly offered the statements to the affiants; (2) the affiants' exposure to extensive media coverage over Melissa's death and the resulting trials; and (3) the affiants' admitted collective memory efforts regarding the statements allegedly made to them by Tessia Mathes a couple of weeks after Melissa's death.

As we believe the above contentions go to the weight to be given to the evidence and not admissibility, we find the State's attempt to bar the admissibility of the affidavits to be without merit for the purposes of the hearing on the motion.

Based on the findings of the district court and additional facts herein stated which are supported by substantial evidence, we cannot conclude the court's decision to admit the evidence under Iowa rule of evidence 803(24) was an abuse of discretion. There are facts in the record that establish the trustworthiness of the affidavits; therefore, we cannot conclude the court's ruling was clearly unreasonable or was based on clearly untenable grounds.

As the State does not contend on appeal that defendant has not satisfied the other factors required to prove admissibility under rule 803(24) at the hearing on the motion, we find those are met.

C. *Newly-discovered evidence probably would have changed the result at trial.* Finally, the State argues that even if we find the newly-discovered evidence to be admissible hearsay, defendant's second motion for a new trial should have been overruled because it is not "probable" that the evidence contained in the affidavits and testimony would have changed the result at trial. The district court disagreed, stating it could not conclude that the newly-discovered evidence would not change the result at trial.

The State first contends the court applied the wrong standard in determining whether to grant a new trial on newly-discovered evidence grounds. Contrary to the State's assertion, we believe the court made such a finding when it stated the newly-discovered evidence "would probably change [the factfinder's] assessment of the evidence and the adjudication of guilt if a new trial is granted."

Next, we must determine whether the court's conclusion that the newly-discovered evidence would probably change the result at trial amounted to an abuse of its discretion.

 In determining whether newly-discovered evidence probably would have changed the result at trial, we examine the district court's ruling regarding the proffered new evidence in view of the strength or weakness of the State's proof of guilt. *See State v. Whitsel,* 339 N.W.2d 149, 156–57 (Iowa 1983); *State v. Gilroy,* 313 N.W.2d 513, 522 (Iowa 1981). The State contends that because none of the three affiants could absolutely identify the date on which the alleged coffee table incident occurred and in light of the State's overwhelming proof of guilt against defendant, it was an abuse of discretion to conclude the new evidence would probably have changed the result at trial. We disagree. We do not believe the fact that the affidavits do not pinpoint a date and/or time for the coffee table incident, in and of itself, would be determinative in assessing whether the court abused its discretion in concluding the incident would probably have changed the result at trial.

 The State also contends that because Melissa experienced acute injuries that were associated with shaken baby syndrome, the court abused its discretion in concluding the evidence would probably have changed the result at trial. On this issue, the State contends:

> *All* of the medical experts, *including the defense's medical experts, agreed that Melissa had various acute injuries* including but not limited to bilateral retinal hemorrhages and bilateral anterior chamber hemorrhages, *which could not have been caused by the alleged hit on the coffee table.*

One of defendant's medical experts, Dr. Blackbourne, testified at the hearing on defendant's second motion for new trial that Melissa's bilateral retinal hemorrhages could

250

have been attributable to chronic edema that the child may have had from the alleged cookie monster chair incident on January 22, 1993. Dr. Earl Rose opined that Melissa's respiratory arrest was caused when a previously existing subdural hematoma re-bled. Based on the newly-discovered evidence, Dr. Rose believed the alleged coffee table incident caused the rebleed to occur and resulting respiratory arrest. On cross-examination, Dr. Rose agreed that the existing subdural hematoma could have either been caused by Melissa's alleged fall from the cookie monster chair on January 22, 1993 (as maintained by Tessia Mathes), or from the alleged coffee table incident on the morning of January 22, 1993 (as alleged by the three affiants).

Although the State and its medical experts vigorously challenge Dr. Blackbourne's and Dr. Rose's theories concerning the cause of death, we believe the district court's conclusion that the newly-discovered evidence probably would change the result at trial was not clearly unreasonable or untenable. The State's case advocating shaken or slammed baby syndrome as the cause of death was disputed by the defendant's experts based in part on the newly-discovered evidence. There is a factual basis in the record to support the court's grant of defendant's second motion for new trial. The district court in an extensive ruling evaluated the newly-discovered evidence and assessed the credibility and weight of the new witnesses' testimony against the complete trial record and thus was in a good position to determine what evidence would and would not probably change the result at trial.

IV. *Defendant's appeal and application for further review of the court of appeals decision.* As we have found the district court did not abuse its discretion in granting defendant's second motion for new trial, we need not address defendant's appeal and application for further review from her convictions because they are moot.

V. *Disposition.* For the reasons stated above, we affirm on the State's appeal from the district court's ruling in which it granted defendant's second motion for a new trial. Based on our decision to affirm on the State's

appeal, we dismiss as moot defendant's appeal and application for further review from her convictions. We remand for further appropriate proceedings.

Costs on both appeals are taxed to the State.

**DECISION OF DISTRICT COURT AFFIRMED ON STATE'S APPEAL; DEFENDANT'S APPEAL AND APPLICATION FOR FURTHER REVIEW DISMISSED AS MOOT; CASE REMANDED.**

All Justices concur except HARRIS, J., who concurs in result.