# IN THE COURT OF APPEALS OF IOWA

No. 15-0899
Filed June 15, 2016

**STATE OF IOWA,**
        Plaintiff-Appellant,

**vs.**

**JOHN MATTHEW OSBORN,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Richard H.

Davidson, Judge.

        The State appeals the order granting John Osborn a new trial for charges

of sexual abuse in the third degree based on newly-discovered evidence.

**AFFIRMED.**

        Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney

General, for appellant.

        Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant

Appellate Defender, for appellee.

        Heard by Potterfield, P.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

The State appeals from the district court's grant of new trial to John Osborn based on newly-discovered evidence following his conviction for four counts of sexual abuse in the third degree. The State argues the district court abused its discretion when it granted Osborn's motion for new trial, contending the messages Osborn discovered after the verdict were not newly-discovered evidence because (1) Osborn could have discovered the messages earlier through due diligence, (2) the messages were not material to the issues in the case, and (3) Osborn failed to show the evidence probably would have changed the result of the trial. We affirm.

## I. Background Facts and Proceedings

On September 3, 2014, the State filed a trial information charging Osborn with four counts of sexual abuse in the third degree, class "C" felonies, in violation of Iowa Code section 709.4(2)(c)(4) (2013). The State alleged that, on or about July 16–17, 2014, Osborn perpetrated sexual abuse on a fourteen-year-old child victim. Osborn waived jury trial, and trial to the bench commenced on February 5, 2015.

At trial, the evidence demonstrated Osborn started communicating through instant messages and phone calls with his daughter's friend in June 2014. The communications started as small talk about sports and Osborn's daughter but intensified to being sexual in nature. On July 16, the victim stayed overnight at Osborn's home as a guest of his daughter. The victim testified at trial that, after Osborn's wife had gone to bed and his daughter had fallen asleep in the living room, Osborn and the victim went to his daughter's bedroom where

Osborn engaged in four separate sexual acts with the victim. Osborn denied the allegations and testified that, after the victim made a sexual advance toward him, he left the living room and went to sleep in the bedroom he shared with his wife. Osborn's daughter also denied Osborn had the opportunity to sexually abuse the victim because she remained awake in the living room with the victim until after her father had gone to bed, and then she and the victim went to sleep in her bedroom.

The parties also introduced physical evidence at trial including instant messages from three different cell phones belonging to Osborn, the victim, and Osborn's daughter. Following the date of the alleged incident, Osborn and the victim deleted the messages between them from their phones. Prior to trial but after the victim's deposition, Osborn discovered and purchased a data-recovery program that allowed him to recover the instant message data he had deleted from his cell phone.[1] Osborn shared the program information with the State, allowing law enforcement to purchase the program and recover instant messages the victim had deleted from her phone. The evidence presented from Osborn's daughter's phone at trial included screenshots of the messages she had sent and received on the night the alleged abuse occurred. Following the close of all evidence on February 6, the court allowed Osborn additional time to go through the voluminous evidence introduced by the State. The court informed Osborn that if additional information was found, it would entertain a motion to

---

[1] Because the messages were sent between the phones as instant messages rather than text messages that passed through their respective wireless carriers, the police were unable to obtain the deleted messages from the carriers.

reopen the evidence. The trial reconvened with closing arguments on February 12. Osborn filed a motion to dismiss, which the district court denied.[2]

On March 26, the district court issued its verdict convicting Osborn of four counts of sexual abuse in the third degree. The court noted, "The initial question is whether there was a window of opportunity for the sexual contact to take place." The court examined the evidence and determined there was a period of a half hour in which Osborn's daughter was not messaging and was likely asleep as the victim had testified, which provided Osborn with the opportunity to perpetrate the sexual abuse. There was also a second, larger gap in sent messages that the district court did not address. Ultimately, the court found the victim's testimony credible and concluded the State had proved the elements of section 709.4(2)(c)(4) beyond a reasonable doubt.

Following the verdict, Osborn ran the data-recovery program on his daughter's phone[3] in an attempt to recover any additional messages not reflected in the screenshots taken from her phone that were admitted in evidence at the trial. He claimed his daughter had received a new phone less than one week after the alleged sexual abuse had occurred and not all of the data had been transferred over to her new phone, thus creating gaps in her messaging reflected in the screenshots. After running the program, he discovered six additional messages that were sent from his daughter's phone during the narrow, half-hour

---

[2] In support of the motion to dismiss, Osborn's attorney argued the State did not provide him with the entire download from the victim's phone until the morning of the second day of trial, after the State had rested and on the day allotted for the defendant's case in chief, even though the date stamp on the evidence showed the prosecution had received it on January 23. He asserted he had no meaningful opportunity to review the evidence and questioned the integrity of the State's download from the victim's phone.

[3] It is unclear from the record whether Osborn ran the data-recovery program on his daughter's phone or her phone's external storage service.

window the court had determined provided him with an opportunity to commit the sexual abuse. On April 20, Osborn filed a motion for new trial based on newly-discovered evidence, arguing the newly-found messages demonstrated his daughter was not asleep during the time when the sexual abuse was to have been perpetrated.[4]

At the hearing on May 8, Osborn argued that he and the victim had both intentionally deleted the messages from their phones to avoid detection and, thus, the data-recovery program was required to retrieve the messages.[5] But, because he had screenshots of the actual messages from his daughter's phone, he had no reason to believe any messages were missing and, therefore, no reason to run the program to look for any additional messages. He claimed, based on the newly-found evidence, his daughter could not have been asleep and, thus, he would not have had the opportunity to sexually abuse the victim because the victim's version of events hinged on whether Osborn's daughter was asleep during that half-hour window of time. The court concluded Osborn could not have discovered the evidence with due diligence before trial and the evidence was relevant, material, and could have changed the outcome of the case. After considering the seriousness of the charges against Osborn, the court determined Osborn had conducted diligent discovery and justice required the motion for new trial be granted and the verdict vacated.

---

[4] The filing included an alternative motion for acquittal based on insufficient evidence, which the district court denied.

[5] At trial, the State stipulated to the admission of evidence obtained through the data-recovery program because it corroborated the victim's version of events. At the May 8 hearing, the State questioned the reliability of the data-recovery program and the evidence it produced.

The State appeals.

## II.    Scope and Standard of Review

"We review a district court's denial or grant of motion for new trial on the basis of newly-discovered evidence for abuse of discretion." *State v. Weaver*, 554 N.W.2d 240, 244 (Iowa 1996), *overruled on other grounds by State v. Hallum*, 585 N.W.2d 249, 253–54 (Iowa 1998).  "We find an abuse of discretion only when discretion is exercised on grounds clearly untenable or to an extent clearly unreasonable." *Id.* (citation omitted).  "The court's discretion in granting or denying a motion for new trial is 'unusually broad' when the new trial motion is grounded on newly-discovered evidence." *Id.* (citation omitted).  "[W]e recognize that motions for new trial are not favored and should be closely scrutinized and sparingly granted." *Id.* at 245.  However, "[w]e give weight to the district court's conclusion that the proffered newly-discovered evidence would have altered the trier-of-fact's decision to convict had the evidence been introduced at trial" and "are more reluctant to disturb a trial court's grant of a new trial than its denial of one." *Id.* at 244–45; *see also* Iowa R. App. P. 6.904(3)(d) ("The [appellate] court is slower to interfere with the grant of a new trial than with its denial."); *State v. Compiano*, 154 N.W.2d 845, 849 (Iowa 1967) ("The trial court is generally in a better position than we to determine whether evidence, newly discovered, would probably lead to a different verdict upon retrial, and we have often said we will not interfere with its ruling unless it is reasonably clear that such discretion was abused.").

### III. Analysis

Iowa Rule of Criminal Procedure 2.24(2)(b)(8) provides, in pertinent part, a district court may grant a new trial "[w]hen the defendant has discovered important and material evidence in the defendant's favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at trial." In order to prevail under this rule, Osborn must show the additional messages from his daughter's phone (1) were discovered after the verdict, (2) could not have been discovered "earlier in the exercise of reasonable diligence," (3) are "material to the issues in the case and not merely cumulative or impeaching," and (4) "probably would have changed the result of the trial in which [he] was convicted." *Weaver*, 554 N.W.2d at 246; *see also State v. Romeo*, 542 N.W.2d 543, 550 (Iowa 1996). On appeal, the State bears the burden of establishing "the district court abused its discretion in granting [Osborn] a new trial." *Weaver*, 554 N.W.2d at 244. The State challenges the second, third, and fourth elements.

> Our supreme court has previously explained the concept of due diligence:
>
> The showing of diligence required is that a reasonable effort was made. The applicant is not called upon to prove he sought evidence where he had no reason to apprehend any existed. He must exhaust the probable sources of information concerning his case; he must use that of which he knows, and he must follow all clues which would fairly advise a diligent man that something bearing on his litigation might be discovered or developed. But he is not placed under the burden of interviewing persons or seeking in places where there is no indication of any helpful evidence.

*State v. Farley*, 226 N.W.2d 1, 4 (Iowa 1975) (quoting *Westergard v. Des Moines Ry. Co.*, 52 N.W.2d 39, 44 (Iowa 1952)).

The State first contends the district court abused its discretion when it concluded Osborn could not have discovered the instant messages on his daughter's phone any earlier through due diligence because prior to trial Osborn had access to both his daughter's cell phone and the data-recovery program he later used to find the instant messages on his daughter's phone. The State also claims Osborn knew before trial that he likely did not have all of the messages even though he knew such evidence could challenge the victim's credibility regarding the timeline of events.

Osborn argues he had no reason to know his daughter had sent any additional messages within the half-hour window of opportunity designated by the court that did not appear in the large volume of screenshots taken from her phone and presented at trial. He claims the purpose of the data-recovery program is to recover deleted messages, like those he and the victim intentionally deleted from their phones to avoid detection, and because his daughter had not intentionally deleted any messages from her phone and the messages initially captured in the screenshots gave no indication that there may have been an incomplete message record, he had no reason to run the program on her phone.[6]

In ruling from the bench on the motion for new trial, the district court noted the question of whether Osborn could have discovered the evidence before trial

---

[6] Osborn claims there may have been some malfunction in the software technology that caused the messages to transfer incompletely or otherwise not be captured in the screenshots following the data transfer from his daughter's old phone to her new one approximately one week after the alleged sexual abuse occurred. He also points to one of the retrieved messages mentioning an issue with the Wi-Fi in their home that night and argues that may have contributed to the incomplete messaging record.

with due diligence was a difficult one, and in reaching its decision, the court "look[ed] at the trial preparation that came out in trial." The court then explained:

> It's obvious that the defendant went to great lengths to retrieve all the data from either his phone or his daughter's phone. As you all know, Exhibit T, which in fact we took a break from the trial because it was so voluminous, so there was in fact at one point during the pretrial discovery, is the Court's understanding, that perhaps the defendant had more data from phones than the State through their investigation had. I also believe that Mr. Osborn and his attorney believed that their diligent search produced all the available content, and that was a fact that also came out at trial through at least one of the witnesses . . . .
> And . . . I think [the assistant county attorney] just referenced it as well, that this technology as good as it is, does not retrieve everything just because the cloud needs room too apparently.
> The Court in considering . . . all these facts in determining whether in fact the defendant could have reasonably discovered this with due diligence considers the seriousness of the charges, also the diligent discovery that I believe was undertaken by both parties, but certainly by the defendant beforehand, and the Court's understanding that all of that material was present and discovered when in fact it was not . . . .

The foregoing explanation demonstrates the trial judge was keenly aware of the level of pretrial discovery and preparation that had been done. Our supreme court has held, "the trial court [i]s in a better position than the appellate court to determine whether diligence . . . was used to discover and produce the alleged new evidence relied upon by movant, and whether it would have probably led to a different result upon a retrial." *Compiano*, 154 N.W.2d at 849 (citing *State v. Addison*, 95 N.W.2d 744, 748 (Iowa 1959)). On our review of the record, Osborn did not have "reasonable cause to believe that favorable and available evidence of a material nature exist[ed]" outside of the messages captured in the screenshots from his daughter's phone. *See id.* at 850 (citation omitted). We cannot find the district court abused its discretion in concluding

Osborn could not have discovered and produced at trial with reasonable diligence the additional instant messages sent from his daughter's phone. *See* Iowa R. Crim. P. 2.24(2)(b)(8).

The State also challenges the third and fourth elements contending the district court abused its discretion in determining the additional messages retrieved from Osborn's daughter's phone through the data-recovery process were material to Osborn's guilt and would probably have changed the result of his trial. The State complains the district court unnecessarily narrowed the window of opportunity for the sexual abuse to have occurred to a short, half-hour time period and the messages are not material to Osborn's case because Osborn could still have committed the sexual abuse within the court's narrow window or at some point outside of the window. The State further asserts the newly-discovered messages, at most, only partially impeach the victim's testimony because Osborn's daughter could have been half asleep and sending the messages during the abuse, rather than fully asleep as the victim testified. Additionally, the State claims the evidence was cumulative because Osborn had already presented evidence at trial that challenged the victim's testimony. Therefore, the State argues, the district court improperly concluded the messages probably would have changed the result of trial and justice does not require that Osborn receive a new trial because the remainder of the evidence still supports the verdict.

Osborn argues that, although the evidence is *incidentally* impeaching or *somewhat* cumulative, it is material and not *strictly* impeaching or cumulative. *See Maland v. Tesdall*, 5 N.W.2d 327, 333 (Iowa 1942) (finding evidence may be

material and a motion for new trial may be granted when the newly-discovered evidence "is neither strictly impeaching nor cumulative"); *see also Westergard*, 52 N.W.2d at 43 (finding cumulative evidence may be deemed material when "the newly-discovered evidence is not entirely or strictly cumulative" and it "goes somewhat farther and introduces some new details"); *Dobberstein v. Emmet Cty.*, 155 N.W. 815, 818 (Iowa 1916) ("[I]t has often been held that newly-discovered evidence to successfully contradict a witness upon a material point may be cause for allowing a new trial, and it is no objection to such order that the evidence may incidentally impeach a witness."). Osborn contends the question of whether the evidence is material is necessarily tied to the question of whether the evidence may have led the factfinder to reach a different conclusion. *See Westergard*, 52 N.W.2d at 43 ("The test is not whether the offered newly-discovered evidence is cumulative, but whether . . . it is sufficient to justify the trial court, in the exercise of a legal discretion, in concluding there is a reasonable probability of a different result upon another trial."). He claims the newly-discovered messages demonstrated his daughter was awake during the half-hour window during which the court found the alleged sexual abuse to have occurred, and therefore, the evidence is primarily substantive because it goes directly to whether the abuse could have been perpetrated.

Regarding these elements, the district court concluded the newly-discovered evidence was material—not merely cumulative or impeaching—and would probably have changed the result of trial. We are reluctant to disturb the district court's decision to grant Osborn's motion for new trial, especially given that the district court acted as the factfinder in this matter. *See Compiano*, 154

N.W.2d at 849 ("It is 'important for the orderly administration of criminal justice that findings on conflicting evidence by trial courts on motions for new trial based on newly-discovered evidence remain undisturbed except for most extraordinary circumstances . . . .'" (citation omitted)); *see also State v. Miles*, 490 N.W.2d 798, 799 (Iowa 1992) ("From its closer vantage point, the presiding trial court has a clearer view of [the] crucial question [of whether the defendant is making a legitimate claim or is moving for new trial in desperation], and we generally yield to its determination."); *Westergard*, 52 N.W.2d at 43 ("[I]f [the trial court] holds justice requires a new trial, and a different result is likely, we cannot ordinarily interfere."). On our review of the record, we conclude the district court did not abuse its discretion.

Accordingly, we affirm the district court's grant of Osborn's motion for new trial based on newly-discovered evidence.

**AFFIRMED.**