**IN THE COURT OF APPEALS OF IOWA**

No. 14-1038
Filed June 29, 2016

**CHARLES BASIL WEST ANDERSON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.

Charles Basil West Anderson appeals the district court's denial of his

postconviction-relief application. **AFFIRMED.**

Andrea K. Buffington of Ranes Law Firm, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Alexandra Link (until withdrawal)

and Kevin R. Cmelik, Assistant Attorneys General, for appellee State.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Charles Basil West Anderson appeals the district court's denial of his postconviction-relief (PCR) application. Anderson contends the district court erred in denying him a new trial based upon newly-discovered evidence. We affirm.

## I.      Background Facts and Proceedings

In 1989, Anderson was convicted of one count of first-degree murder and one count of attempted murder, offenses that occurred in 1986. On direct appeal, a panel of this court summarized the underlying facts as follows:

> The defendant and both victims, Ricky Rollens and Kenneth Hunter, had been drinking and doing a variety of drugs during the evening preceding the shooting. As the night continued, the threesome ran out of money, and the defendant told Hunter and Rollens he had a television set which the three of them could pawn. They did so and bought cocaine.
> The three took the cocaine and went driving. At some point an argument ensued. Apparently the defendant was convinced Hunter and Rollens had stolen a gold chain from his neck while he was passed out in the back seat of the car.
> Eventually the car ran out of gas, and Hunter and Rollens left to get more. During this time, the defendant got into a car driven by a Duane Smith and he, along with other occupants of the car, drove around. The defendant remained with this group until Mr. Smith's car ran out of gas. By this time, Hunter and Rollens had returned with gas for their car, and the defendant again joined them.
> As the three drove, Rollens and the defendant began arguing again. About this time Smith's car pulled up behind them and began honking. They pulled over and the Smith car parked ahead of them. A man from the Smith car came back and asked defendant if he still "had the stuff"; the defendant stated he did and gathered his belongings and went to the Smith car. Rollens then pulled his car forward and said something to the defendant. At some point it is alleged Rollens made a statement to the defendant with regard to "putting you (the defendant) in Glendale" which is a cemetery. The defendant proceeded to the victim's car, they argued for a minute or so, and the defendant shot into the car. Rollens was killed and Hunter was injured.

*State v. Anderson*, No. 89-1675, slip op. at 2-3 (Iowa Ct. App. Feb. 26, 1991). This court affirmed the convictions on direct appeal. *Id.* at 8.

In April 2013, Anderson filed the present PCR application, alleging, in relevant part, newly-discovered evidence warranted a new trial. The district court denied his application, and Anderson now appeals.

## II.      Standard and Scope of Review

District court rulings on PCR applications based on newly-discovered evidence are reviewed for abuse of discretion. *See State v. Smith*, 573 N.W.2d 14, 17 (Iowa 1997); *Jordan v. State*, No. 11-0166, 2012 WL 2819356, at *3 (Iowa Ct. App. July 11, 2012) (noting PCR proceedings are usually reviewed for errors at law, but, when based upon newly-discovered evidence, are reviewed for abuse of discretion); *Harris v. State*, No. 01-0406, 2002 WL 31115246, at *2 (Iowa Ct. App. Sept. 25, 2002) (same). "We find an abuse of discretion only when discretion is exercised on grounds clearly untenable or to an extent clearly unreasonable." *State v. Weaver*, 554 N.W.2d 240, 244 (Iowa 1996) (citation omitted), *overruled on other grounds by State v. Hallum*, 585 N.W.2d 249, 253-54 (Iowa 1998).

## III.      Analysis

We employ the same analysis for Anderson's PCR application as we would a motion for new trial based on newly-discovered evidence. *See Schawitsch v. State*, No. 11-0743, 2012 WL 1439223, at *3 (Iowa Ct. App. Apr. 25, 2012) ("It is obvious the legislature intended the sufficiency of the showing necessary to obtain a new trial based on newly discovered evidence to be the same whether the ground is raised in a motion for new trial or in a postconviction

application." (quoting *State v. Sims*, 239 N.W.2d 550, 555 (Iowa 1976))). To prevail on a newly-discovered-evidence claim, Anderson must show the proffered evidence (1) was discovered after the verdict, (2) could not have been discovered "earlier in the exercise of reasonable diligence," (3) "is material to the issues in the case and not merely cumulative or impeaching," and (4) "probably would have changed the result of the trial in which [he] was convicted." *Weaver*, 554 N.W.2d at 246; *see also State v. Romeo*, 542 N.W.2d 543, 550 (Iowa 1996).

In its ruling, the PCR court provided the following summary of the evidence presented at the PCR hearing:

> [Anderson] relies solely upon the testimony of [James] Bolden as the source of the claimed new evidence. Bolden testified in both his deposition and at trial that he was an eyewitness to the incident which resulted in the charges and eventual conviction against Anderson, and that he observed both gunfire coming from the direction of the vehicle in which the victims were as well as Anderson being wounded as a result of that gunfire. As Bolden described it, Anderson was "spun around" after getting shot. Anderson also confirmed this version, testifying that he received a "grazing wound" or a "flesh wound" from being shot, and that he was cared for by friends or relatives afterwards without formal medical treatment.

In denying Anderson's application, the PCR court reasoned:

> Among the strategies employed for the benefit of Anderson at his criminal trial was the defense of justification or self-defense, which was obviously rejected by the jury in that trial. Anderson testified at trial, and explained that as he approached the victims' vehicle he saw both men brandishing weapons and that he fired out of fear for his life before they fired. Nowhere in his trial testimony did Anderson mention any shots coming from the victims' vehicle. Even more astonishing, Anderson makes no mention of ever having been shot by his victims. While some of the intricate details of the incident may have been lost to Anderson's impairment at the time, the court sees no conceivable way for Anderson to have omitted the fact that he was shot prior to firing the shots from his own weapon. He testified during the postconviction proceeding that

he provided truthful testimony during his criminal trial and did not omit any material fact.

This court, as the trier of fact in this proceeding, has the obligation to weigh the credibility of the witnesses offered and reconcile any inconsistencies in the evidence. In this role, the court has no hesitancy to conclude that the testimony of both Anderson and Bolden in this proceeding wholly lacks credibility. If Anderson is to be now believed, he sustained a wound (albeit a minor one) for which others provided care and treatment. And yet this fact, one completely within Anderson's control and recollection, was never mentioned in the criminal trial. There can only be one rational explanation for this omission—the claimed shooting never occurred. Accordingly, Bolden's testimony is equally lacking in credibility. The court need not decide if the essence of Bolden's evidentiary contribution could have been uncovered prior to the criminal trial or that it would have changed the outcome thereof; it is enough to conclude that his testimony has no basis in fact and has been created out of whole cloth. This postconviction claim contemplates the existence of newly discovered evidence, not newly created evidence. There is no basis for this court to afford Anderson any relief from his criminal conviction and sentence.

As the reviewing court, we give weight to the PCR court's determinations regarding a witness's credibility. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). The record and PCR ruling before us establishes the PCR court "gave careful and thoughtful attention to all of the evidence" Anderson presented at the PCR hearing. *Harris*, 2002 WL 31115246, at *3. As in *Harris*, the PCR court supported its conclusions with specific findings on the credibility of the witnesses—here, Anderson and Bolden. *See id.* That conclusion is supported by the record before this court on appeal. We conclude the district court did not abuse its discretion in denying Anderson's claim as the evidence presented was inconsistent with Anderson's testimony at trial and relied upon the testimony of wholly unreliable witnesses. *See State v. Rosales-Martinez*, No. 02-0399, 2003 WL 21229134, at *4 (Iowa Ct. App. May 29, 2003) (affirming the district court's denial of a motion for new trial noting, in part, "the motion for new trial was based

solely on the new statements by [the witness], and consequently depended greatly on her credibility," thus, "the court's determination in this regard is vital"); *State v. Moore*, No. 98-1038, 1999 WL 1136569, at *3 (Iowa Ct. App. Dec. 13, 1999) (affirming the district court's denial of a motion for new trial where, in part, the district court questioned the witnesses' credibility, noted inconsistencies in one witness's statements when compared to the trial evidence, and noted the other witness's testimony was inconsistent with the defendant's theory of self-defense).

**AFFIRMED.**