**STATE of Iowa, Appellee,**

v.

**Matthew HALLUM, Appellant.**

No. 97–370.

Supreme Court of Iowa.

Oct. 21, 1998.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Julie H. Brown, Assistant Attorney General, Thomas S. Mullin, County Attorney, and Mark Campbell, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

Defendant, Matthew Hallum, appeals his criminal convictions claiming the trial court's admission of the videotaped, narrative statement of Hallum's accomplice violated the ban on hearsay evidence and Hallum's rights under the Confrontation Clause. *See* U.S. Const. amend. VI; Iowa R. Evid. 802. Hallum also alleges ineffective assistance of trial counsel based on his attorney's stipulation to the admission of certain assertions contained in the narrative statement. Finding no reversible error, we affirm.

## I. *Factual Background.*

In the early morning hours of February 26, 1993, Matthew Hallum and his half-brother, Carlos Medina, helped Justin Cloud push his car out of the snow.[1] Cloud and his friend, Tanya Rubottom, invited the brothers back to Cloud's apartment for drinks. They drank until the early hours of the morning.

The events occurring next were related to the jury by Cloud, who testified at trial, and Medina, whose videotaped statement was admitted at trial. After Rubottom and Cloud had retired to the bedroom, Rubottom decided to return to the living room to tell Hallum and Medina to leave. Cloud followed her a few minutes later and discovered Hallum and Medina molesting Rubottom. Hallum and Medina then beat Cloud and tied his hands behind his back with electrical cord. While Cloud "played dead," he could hear the brothers raping Rubottom and then he heard her gagging. Medina similarly stated that after beating and tying up Cloud, he and his brother had oral, anal and vaginal inter-

---

1. Medina was sixteen years old at the time of these events. Hallum was fifteen years older than Medina.

course with Rubottom and then strangled her with a bandanna worn by Hallum.

After Hallum and Medina left, Cloud went to another apartment, screaming hysterically that "Indians" had broken into his apartment, had killed his "wife," and had beaten him. (Hallum and Medina are Native Americans.) Clouds hands were still tied behind his back and his face was bruised and beaten. When the police arrived in response to the neighbor's call, Cloud was still hysterical and appeared intoxicated. He first told the police that he had killed Rubottom, but then changed his story and said some "Indians" had murdered her.

Hallum's fingerprints were found at the scene. An autopsy confirmed that Rubottom had been sexually assaulted orally, anally and vaginally, but there was insufficient DNA material to identify the perpetrators. The autopsy also confirmed that Rubottom died of ligature strangulation.

## II. *District Court Proceedings.*

A. *Investigation and charge.* Law enforcement officials questioned Medina on February 26 and videotaped the interview. After being given a *Miranda* warning, Medina admitted that he and Hallum assaulted Cloud, sexually assaulted Rubottom, and then killed Rubottom. The State charged Hallum with first-degree sexual assault, *see* Iowa Code §§ 709.1, .2 (1993), first-degree murder, *see id.* §§ 707.1, .2, and attempted murder, *see id.* § 707.11.

B. *Pretrial rulings.* In a pretrial ruling and after an evidentiary hearing, the district court, District Judge Dewie J. Gaul, held that certain portions of Medina's statement were admissible under Iowa Rule of Evidence 804(b)(3) (declaration against penal interest) and Iowa Rule of Evidence 804(b)(5) (residual hearsay exception). The court also held admission of these declarations did not violate Hallum's confrontation rights.

The State planned to call Medina as a witness at trial, but Medina refused to testify even after the State granted him immunity and even after the court jailed him for contempt. Not only did Medina refuse to testify, he also recanted his videotaped statement.

The State then sought a pretrial ruling that Medina's *entire* statement was admissible on the basis that Hallum had waived any objection to the statement under the hearsay rule and the Confrontation Clause by procuring his brother's unavailability. The State claimed correspondence between Hallum and Medina and between Hallum and the brothers' mother showed that Hallum had encouraged Medina not to testify at Hallum's trial. The State also claimed certain declarations from the statement were admissible under rules 804(b)(3) and 804(b)(5). Hallum's attorney stipulated that the specific declarations identified by the State were admissible, but objected to admission of the balance of the statement. After another evidentiary hearing, the trial court, District Judge Phillip S. Dandos, admitted the entire videotaped statement given by Medina, ruling that Hallum had waived any objection by procuring his brother's unavailability.

C. *Trial.* The case then proceeded to trial before Judge Gaul. Hallum's defense at trial was that Cloud had murdered Rubottom. Hallum admitted being at Cloud's apartment that night, but claimed that Rubottom was alive when he and his brother left early on the morning of February 26.

Prior to airing the videotape of Medina's statement, the court informed the jury that Medina refused to testify even though he was not subject to prosecution and that he now claimed the statement he gave to the police was not true. The jury found Hallum guilty of first-degree murder, *see* Iowa Code §§ 707.1, .2, first-degree sexual assault, *see id.* §§ 709.1, .2, and assault with intent to commit serious injury, *see id.* §§ 708.1, .2.

The only issue on appeal is the propriety of the court's decision to admit Medina's videotaped statement. Because we find no ground for reversal based on the hearsay ban or the Confrontation Clause, we do not address the State's claim that Hallum waived any objections to the statement by his alleged procurement of Medina's unavailability.

## III. *Hearsay Exception for Statement Against Penal Interest.*

A. *Standard of review.* We have on prior occasions reviewed the admission of

hearsay evidence for abuse of discretion. *See, e.g., State v. Veal,* 564 N.W.2d 797, 807–08 (Iowa 1997); *State v. Weaver,* 554 N.W.2d 240, 247 (Iowa 1996). Recently, however, we stated such rulings should be reviewed for correction of errors of law. *See State v. Ross,* 573 N.W.2d 906, 910 (Iowa 1998). We adhere to our decision in *Ross* and review the trial court's admission of Medina's statement for correction of errors of law.

B. *Requirements for exception.* Iowa Rule of Evidence 804(b)(3) sets forth an exception to the general ban on hearsay evidence:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, ... that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

This exception requires that the declarant be unavailable, a fact not disputed in the case before us. *See* Iowa R. Evid. 804(a)(2) (defining unavailability of a witness to include one who "persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so").

■ Hallum urges this court to require a showing that "corroborating circumstances clearly indicate the trustworthiness of the statement when the statement" tends *to implicate* an accused, which is the situation here. *See* Iowa R. Evid. 804(b)(3). The rule itself, however, imposes such a requirement only when the statement *exculpates* the accused. *See id.* Well-established rules of statutory construction prevent us from adding a requirement to the rule that is clearly not found in the language of the rule itself. *See State v. Eames,* 565 N.W.2d 323, 327 (Iowa 1997) (holding court will not read an additional requirement into statute under guise of statutory construction); *In re Estate of Voss,* 553 N.W.2d 878, 880 (Iowa 1996) ("When the text of a statute is plain and its meaning clear, we will not search for a meaning beyond the express terms of the statute....").

■ Our focus, then, is on whether the evidence admitted by the trial court "so far tended to subject [Medina] to ... criminal liability ... that a reasonable man in his position would not have made the statement[s] unless he believed they were true." Iowa R. Evid. 804(b)(3). In applying this standard, we examine each declaration individually to determine whether it is self-inculpatory. *See Williamson v. United States,* 512 U.S. 594, 599–601, 114 S.Ct. 2431, 2434–35, 129 L.Ed.2d 476, 481 (1994) (holding under identical federal rule of evidence that each declaration must be "individually self-inculpatory"). The assertions contained in Medina's statement can be separated into three categories for purposes of our discussion: (1) those that were inculpatory only of Medina; (2) those that were equally inculpatory of Medina and Hallum; and (3) those that were inculpatory only of Hallum. We will consider the admissibility of each category separately.

■ C. *Admissibility of declarations implicating only Medina.* In interpreting the federal counterpart to rule 804(b)(3), the United States Supreme Court has stated that "even the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor." *Id.* at 603, 114 S.Ct. at 2436, 129 L.Ed.2d at 485; *cf. State v. Veal,* 564 N.W.2d 797, 808 (Iowa 1997) (holding "statements admitting to a lesser offense are [not] against [penal] interest when offered to defend against a more serious crime"). Thus, we must consider (1) whether the declaration tended to subject Medina to criminal liability such that a reasonable person would not make the declaration, and (2) whether the circumstances of the statement indicate that the declaration was not an attempt to shift blame or curry favor with the authorities. If both requirements are met, the declaration is truly self-inculpatory and may be admitted under rule 804(b)(3).

■ We conclude Medina's assertions falling in this first category were truly inculpatory; they were graphic descriptions of his

sexual assault of the victim and his description of how he wiped his fingerprints off items in the apartment. These declarations did not mention Hallum and were clearly against Medina's penal interest. In addition, they did not serve to shift blame to Hallum because Hallum is not even referenced in these assertions. In fact, at one point in his statement, Medina denies that his brother encouraged him to have sex with Rubottom; Medina acknowledges that he made that decision on his own and that he knew Rubottom did not consent.

Furthermore, there is nothing to indicate that Medina was trying to curry favor with the authorities by admitting that he personally committed these heinous crimes. Hallum argues that Medina "had something to gain by providing the statement to police," but he fails to point to any evidence in the record showing what Medina had to gain or that Medina thought he had something to gain. Hallum in essence relies on the supposition that *any* person who voluntarily gives a statement to the police does so to curry favor. If this general assumption were sufficient to prevent a declaration from being truly self-inculpatory, then statements of accomplices would never be admissible—a result clearly at odds with the intended scope of rule 804(b)(3). *See Williamson,* 512 U.S. at 603, 114 S.Ct. at 2436, 129 L.Ed.2d at 485 (stating that statements of accomplices can be admitted under federal rule 804(b)(3) when the requirements of that rule are met).

In summary, we hold that Medina's assertions implicating only himself in the rape and murder of Rubottom and the assault of Cloud were truly self-inculpatory. Therefore, the trial court did not err in admitting these declarations.

D. *Admissibility of declarations implicating Medina and Hallum equally.* The second category of assertions contained in Medina's statement inculpated both Medina and Hallum at the same time. Examples of the assertions in this category are the declarations that *"we killed her," "we were having sex with her,"* and *"we grabbed [the tapes], because we touched them."* Obviously, these declarations are self-inculpatory because Medina admits he committed the crimes or admits to other conduct implicating him in the crimes. Unlike the statements in the first category, however, these assertions directly inculpate Hallum.

The mere fact, however, that a statement inculpates another does not mean that it is not against the penal interest of the declarant, when viewed in context. *See* 31 Michael H. Graham, *Federal Practice and Procedure* § 6795, at 616, 620 (2d ed. 1997). The concurring opinion in *Williamson* noted that "a declarant's statement is not magically transformed from a statement against penal interest into one that is inadmissible merely because the declarant names another person or implicates a possible codefendant." 512 U.S. at 606, 114 S.Ct. at 2438, 129 L.Ed.2d at 487 (Scalia, J., concurring). We agree with this interpretation of rule 804(b)(3) and, therefore, focus again on whether the assertions in this category "so far tended to subject [Medina] to ... criminal liability ... that a reasonable man in his position would not have made the statement[s] unless he believed they were true," Iowa R. Evid. 804(b)(3), and whether they were made to shift blame or curry favor.

Although declarations such as "we killed her" could be viewed as an attempt to *share* blame, they could not reasonably be seen as an attempt to *shift* blame away from Medina because these assertions implicated Medina fully and *equally* in the crimes. Thus, we do not view the assertions in this category as mitigating Medina's involvement in the crimes as urged by Hallum on appeal. And, as we observed earlier, there is nothing in the circumstances of the statement indicating that Medina was trying to curry favor with law enforcement personnel. We hold the trial court did not err in admitting the declarations equally inculpatory of Medina and Hallum. *See Earnest v. Dorsey,* 87 F.3d 1123, 1134 (10th Cir.1996) (allowing statements inculpatory as to all accomplices by relying on inclusive language such as "we").

E. *Admissibility of declarations implicating only Hallum.* The assertions falling in this third category are Medina's description of Hallum's separate actions during the crimes. These statements are not

inculpatory of Medina except by collateral proximity. In *Williamson,* the United States Supreme Court held that the federal equivalent of rule 804(b)(3) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." 512 U.S. at 600–01, 114 S.Ct. at 2435, 129 L.Ed.2d at 483. We agree and conclude that the statements implicating only Hallum were not admissible under rule 804(b)(3). *See Carson v. Peters,* 42 F.3d 384, 386 (7th Cir. 1994) ("Portions of inculpatory statements that pose no risk to the declarants are not particularly reliable; they are just garden variety hearsay.").

The admission of this hearsay evidence does not, however, automatically result in reversal. The error is harmless "if there is other overwhelming evidence of [Hallum's] guilt, so that the prejudicial impact of [Medina's] statement was relatively insignificant." *State v. Jefferson,* 574 N.W.2d 268, 275 (Iowa 1997). In making this assessment, we must weigh the properly admitted evidence against the hearsay statements implicating only Hallum. *See id.* In doing so, we conclude the admissible evidence of Hallum's guilt was so overwhelming that the improperly admitted statements did not change the outcome of the trial.

Hallum himself testified that on the evening in question he was with his brother. He further admitted that they were at Cloud's apartment that night and that Rubottom was also present. Although he claimed that Rubottom was still alive and had not been sexually assaulted when he and his brother left the apartment, there was no other evidence that supported this story.

To the contrary, Medina's self-inculpatory statements and Cloud's testimony directly contradicted Hallum's version of the events occurring that evening. Moreover, the physical evidence supported Medina's and Cloud's descriptions of what happened that night;

the coroner testified that Rubottom died of ligature strangulation and she had been raped in various ways. In addition, Cloud's neighbor testified at trial that she awoke to Cloud's banging on her apartment door. She observed his hands tied behind his back, bruises on his face, a black eye, and blood under his nose. She recalled that the cord binding his hands was tied very tightly. Contrary to Hallum's asserted defense, Cloud was clearly not in a position to kill Rubottom.

In short, we are "satisfied beyond a reasonable doubt that the fact finder would have [found Hallum guilty]" even if the hearsay statements implicating only Hallum had not been admitted. *State v. Brodene,* 493 N.W.2d 793, 797 (Iowa 1992). Therefore, the admission of declarations implicating only Hallum was harmless and is not cause for reversal.

## IV. *Confrontation Clause.*

Hallum argues that even if Medina's declarations were admissible under an exception to the hearsay rule, their admission violated his constitutional right to confront the witnesses against him. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."). We review this constitutional claim de novo. *See Jefferson,* 574 N.W.2d at 271.

The Confrontation Clause does not operate as an absolute ban on hearsay evidence. *See Idaho v. Wright,* 497 U.S. 805, 813, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638, 651 (1990). If the declarant is unavailable and the statement "bears adequate indicia of reliability," hearsay declarations may be received into evidence without violating a defendant's confrontation rights. *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980).[2] The "indicia of

---

2. Whether the unavailability of the declarant must be shown when the hearsay is in the form of a confession is somewhat unclear. In *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), the United States Supreme Court limited the *Roberts* unavailability requirement to situations where "the challenged out-of-court statements were made in the course of a prior judicial proceeding." 502 U.S. at 354, 112 S.Ct. at 741, 116 L.Ed.2d at 858. The court in *White* held that the Confrontation Clause did not require a showing of the declarant's unavailability where the challenged statements fell within a firmly-rooted exception to the hearsay rule. *Id.*

reliability" requirement can be met in one of two ways: "where the hearsay statement 'falls within a firmly rooted hearsay exception,' or where it is supported by a 'showing of particularized guarantees of trustworthiness.'" *Wright,* 497 U.S. at 816, 110 S.Ct. at 3147, 111 L.Ed.2d at 653 (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 597). We think the hearsay statements properly admitted here pursuant to rule 804(b)(3) are supported by a showing of particularized guarantees of trustworthiness.

▮▮▮▮ Particularized guarantees of trustworthiness must be shown from the totality of the circumstances, but may not be based on other evidence at trial:

> In short, the use of corroborating evidence to support a hearsay statement's "particularized guarantees of trustworthiness" would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result … at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility.

*Id.* at 822, 110 S.Ct. at 3150, 111 L.Ed.2d at 657. Some of the factors relevant to a determination of the reliability of hearsay assertions include (1) whether the declarant was offered leniency in exchange for the statement, (2) whether the declarant attempted to shift blame from himself to the accused or whether the statement equally implicates both the declarant and the accused, (3) whether the declarant took full responsibility for his role in the offenses, (4) whether the

declarant attempted to curry favor with the authorities through his statement, (5) whether the declarant was informed of his *Miranda* rights, (6) whether the declarant was caught "red-handed" and merely tried to share blame by implicating another, (7) whether the statement was made shortly after the events, and (8) whether the statement was detailed. *See Lee v. Illinois,* 476 U.S. 530, 544–45, 106 S.Ct. 2056, 2064–65, 90 L.Ed.2d 514, 528–29 (1986); *United States v. Mendoza,* 85 F.3d 1347, 1351–52 (8th Cir. 1996); *Earnest,* 87 F.3d at 1131–32; *United States v. Flores,* 985 F.2d 770, 782 (5th Cir. 1993); *United States v. Bakhtiar,* 994 F.2d 970, 978 (2d Cir.1993).

▮▮▮ When we examine the circumstances of Medina's statement in light of these factors, we conclude that each factor supports a finding of reliability: (1) Medina was not offered leniency in exchange for his statement; (2) he did not attempt to shift blame to Hallum, but rather implicated himself and Hallum equally in the crimes; (3) he unequivocally acknowledged that he committed these serious offenses and did not attempt to avoid responsibility for his own acts; (4) he did not attempt to curry favor with the police; (5) he voluntarily gave his statement after being informed of his *Miranda* rights; (6) he was not caught "'red-handed" and so was not in a situation where his only recourse was to share the blame by implicating Hallum; (7) the statement was made shortly after the crimes had been committed while Medina's recall of the events would be most clear; and (8) Medina's statement was extremely detailed.[3] Medina's later recanta-

---

at 356, 112 S.Ct. at 743, 116 L.Ed.2d at 859. Thus, it is unclear whether the unavailability requirement remains in a situation such as the one before us where the hearsay statement is found reliable, not because it falls within a firmly rooted exception to the hearsay rule, but because it has particularized guarantees of trustworthiness. *See also White,* 502 U.S. at 365, 112 S.Ct. at 747, 116 L.Ed.2d at 865 (Thomas, J., concurring) (suggesting that confessions are in the same class as prior testimony for purposes of the Confrontation Clause). This uncertainty is of no moment in this case, however, because even if the Confrontation Clause requires a showing of unavailability, such a showing was made.

3. The district court, which concluded Medina's statement was "trustworthy, reliable and worthy

of belief," made the following observations after viewing the videotape:

> The answers frequently are spontaneously given, and the videotape shows the declarant had ample time to reflect on his answers and described the events in the form he ultimately admitted more than once. The declarant was articulate and shows, throughout the videotaped interview, no sign of disorientation nor evidence of jumbled thought proces…. [W]hen statements implicate the defendant alone they do not appear motivated by a desire to avoid self-incrimination or curry favor, avenge himself, or divert attention from himself.

tion of his statement does not undermine these indicia of reliability. As the trial court noted, his recantation was vague and offered no alternative version of the events. We also agree with the trial court's observation that, considering Medina had been granted immunity, the "only discernible reason for not testifying [was] to protect his brother.... If Medina were able to furnish exculpatory evidence for his brother he would do so." This observation finds support in the correspondence between the brothers, which showed they were very supportive of each other.

Under similar circumstances, the Tenth Circuit Court of Appeals held an accomplice's confession, which was profoundly inculpatory of both the declarant and the accused, was reliable. *See Earnest,* 87 F.3d at 1132–35. The facts found most important by the Tenth Circuit included (1) the statement strongly implicated the declarant, (2) the declarant did not attempt to shift blame to the accused but rather "told a gruesome story that implicated [both] men," (3) the declarant was not threatened or coerced by law enforcement agents, (4) the declarant was not granted leniency so as to have a motive to lie, (5) the declarant had no reason to retaliate against the accused, and (6) the confession was highly detailed. *See id.*

In contrast, the Fifth Circuit Court of Appeals reached the opposite conclusion under similar facts holding that statements accusatory of another given to law enforcement officials "should generally be regarded as inadmissible under the Confrontation Clause." *See Flores,* 985 F.2d at 780. The court was unpersuaded that the factors usually deemed to indicate trustworthiness "substantially eliminated any reasonable possibility that the third party inculpatory portions of a confession to law enforcement personnel are unreliable." *Id.* at 782.

 We share the Fifth Circuit's obvious reluctance to find a statement reliable merely because several facts that *generally* indicate trustworthiness are present. The court must make a particularized evaluation of the facts and attempt to ascertain the declarant's actual motivations based on "the relevant circumstances ... that surround the making of the statement and that render the declarant particularly worthy of belief." *See Wright,* 497 U.S. at 819, 110 S.Ct. at 3148, 111 L.Ed.2d at 655. But contrary to the Fifth Circuit's view, if a prudent analysis of the facts surrounding the contested statement reveals substantial guarantees of trustworthiness, the statement should be admitted. We think, based on the facts recited above, that such guarantees of trustworthiness are present here.[4] Consequently, the trial court did not violate Hallum's confrontation rights by admitting Medina's hearsay assertions implicating himself or implicating himself and Hallum equally.

 We cannot reach the same conclusion with respect to those assertions inculpatory of Hallum only. Nevertheless, for the reasons discussed in connection with Hallum's hearsay objection, we find any constitutional error with respect to the admission of

4. Hallum points out that Medina's statement was suppressed in the criminal proceedings initiated against Medina. The record shows that Medina was also charged with sexual abuse in the first degree and murder in the first degree. His videotaped statement was suppressed in his criminal prosecution because the authorities had not complied with the special requirements applicable to juveniles in taking Medina's statement. *See* Iowa Code § 232.11(2) ("The waiver [of the right to be represented by counsel] by a child who is at least sixteen years of age is valid only if a good faith effort has been made to notify the child's parent, guardian, or custodian that the child has been taken into custody and of the alleged delinquent act for which the child has been taken into custody, the location of the child, and the right of the parent, guardian, or custodian to visit and confer with the child."). We have held that a sixteen-year-old juvenile alone may waive his right to counsel, but the requirements of § 232.11(2) must be met in order for the juvenile's statement to be admissible. *See State v. Nelson,* 435 N.W.2d 344, 347 (Iowa 1989). Thus, § 232.11(2) establishes a *per se rule of inadmissibility. See id.* Because the authorities had not made a good faith effort to notify Medina's mother of the information required by § 232.11(2), Medina's statement was per se inadmissible in the criminal proceedings initiated against him. Therefore, the court in Medina's case made no separate inquiry into the voluntariness of Medina's statement or the existence of other circumstances indicating that the statement was reliable. Based on the per se nature of the suppression ruling, we do not think it undermines our analysis of the circumstantial guarantees of trustworthiness of Medina's statement.

these declarations harmless beyond a reasonable doubt. *See Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684 (1986) (holding denial of confrontation rights can be harmless if the "reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt"); *see also Wright,* 497 U.S. at 823, 110 S.Ct. at 3150–51, 111 L.Ed.2d at 657 (observing that presence of corroborating evidence may indicate that any error in admitting a hearsay statement was harmless). Consequently, there is no basis for reversal based on Hallum's right to confront the witnesses against him.

## V. *Ineffective–Assistance–of–Counsel Claim.*

■■■■■ Hallum claims his trial counsel rendered ineffective assistance because his attorney stipulated to the admissibility of approximately a dozen declarations from Medina's statement. To succeed in this claim, Hallum must prove that his trial counsel failed to perform an essential duty and that Hallum was prejudiced by this failure. *See State v. Brooks,* 555 N.W.2d 446, 448 (Iowa 1996). We may affirm on appeal if either element is lacking. *See id.*

■■■■ Based on our discussion of the admissibility of the assertions contained in Medina's statement, it is apparent that counsel's trial stipulation did not result in prejudice to Hallum. With respect to the assertions that were admissible under rule 804(b)(3), they would have been admitted even in the absence of counsel's stipulation. As for the assertions that were not admissible under this rule, we have held their admission constituted harmless error. Therefore, to the extent trial counsel's stipulation included declarations falling in this category, the stipulation did not result in any prejudice to Hallum. *See State v. Bugely,* 562 N.W.2d 173, 178 (Iowa 1997) ("To prove prejudice, the defendant must show there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"). Accordingly, we reject Hallums ineffective-assistance-of-counsel claim.

## VI. *Summary.*

The trial court did not err in admitting those portions of Medina's statement that inculpated only Medina or that inculpated Medina and Hallum equally. These assertions were admissible under the exception to the hearsay rule for declarations against penal interest found in Iowa Rule of Evidence 804(b)(3). Moreover, because these assertions had "particularized guarantees of trustworthiness," their admission did not violate Hallum's confrontation rights. As for those declarations that inculpated only Hallum, their admission was harmless beyond a reasonable doubt.

Finally, we reject Hallum's ineffective-assistance-of-counsel claim, which was based on his trial counsel's stipulation to the admission of twelve of Medina's hearsay declarations. Hallum suffered no prejudice from counsel's stipulation.

**AFFIRMED.**