# IN THE COURT OF APPEALS OF IOWA

No. 21-1827
Filed February 8, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NATHAN RAY TESCH,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Clay County, Nancy L. Whittenburg,

Judge.


        The defendant appeals his conviction for third-degree burglary and the

category "B" restitution he was ordered to pay. **CONVICTION AFFIRMED; WRIT**

**ANNULLED.**


        Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer, Assistant

Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


        Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

Nathan Tesch appeals his conviction for third-degree burglary and the category "B" restitution the district court ordered him to pay. He challenges the sufficiency of the evidence supporting his conviction, argues the State committed a *Brady* violation[1] that entitles him to a new trial, and claims the district court abused its discretion when it determined his reasonable ability to pay category "B" restitution.

**I. Background Facts and Proceedings.**

A notification went out from a rented storage unit at approximately 3:00 a.m. on February 6, 2021, that motion was detected by the surveillance camera in the unit. Jason, a salesman who keeps products in the unit,[2] received the notification when he woke up later the same morning. After driving to the unit, Jason could see footprints leading up to it and that the lock was missing; he called the local police to report a break in. Jason would later testify that, after checking the products in the unit against his inventory list, he determined a number of things were missing, including thirty-six bottles of butane, three or four torch lighters, and one twenty-four-count box of artificial roses in glass tubes (branded as an "I Love You Rose").[3]

---

[1] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

[2] Jason is employed as a route salesman and supplies products to convenience stores. Those products include things like sunglasses, cell phone accessories, energy drinks, giftware, and toys.

[3] Jason described the "I Love You Rose" as "a glass cylinder . . . with a fake little flower inside it" and testified he became aware that people often use the glass cylinders as drug pipes.

Officer Matthew Molina responded to the call and, noticing a set of footprints in the fresh snow, followed tracks from the storage unit to the front door of a home. When his knocks went unanswered, Officer Molina obtained a search warrant and then returned with additional officers several hours later to execute the warrant. After entering, they found Madison, the homeowner; Tesch; and a third person inside. Believing the shoes Tesch was wearing were consistent with the prints he followed to the door, Officer Molina arrested him.

Tesch was later charged by trial information with third-degree burglary. He pled not guilty, and the case was tried to a jury in October 2021. Following two days of evidence, the jury convicted Tesch as charged.

On November 22, Tesch was sentenced to five years of incarceration. At the sentencing hearing, he made a verbal request for a determination of his reasonable ability to pay the category "B" restitution stemming from the case. The district court concluded Tesch did not have an affidavit of financial status on file in the case so it could not make the determination at that time; the question of Tesch's ability to pay was set for a later date, in combination with his reasonable ability to pay in sixteen other cases (a separate action that Tesch initiated by application on June 8, 2021). Following the court's entry of judgment and sentence, Tesch filed an appeal.

Then, following the court's determination that eight of the seventeen cases did not warrant a hearing on Tesch's reasonable ability to pay and after a number of continuances, the court issued a restitution ruling on January 31, 2022. In reaching its decision, the court set out the category "B" restitution for each of Tesch's other eight cases (totaling $1406.59) and the amount for the burglary case

($3803.32). The court added all of the category "B" restitution together to get $5209.91 and then, relying on the financial affidavit Tesch filed on June 8, 2021, when he applied for the reasonable-ability-to-pay hearing, considered that total amount when determining Tesch's reasonable ability to pay. The court ordered Tesch to pay the full $5209.91, reasoning:

> [Tesch] has not shown that he has any dependents. He is forty-two years of age and holds a post-secondary associate degree. Although he is presently incarcerated on a term not to exceed five years in [this burglary case], there is no reason to believe he will not be able to return to the work force when released from his present incarceration. He does not present any evidence of disability either physically or mentally which would prevent or preclude future employment upon his release from custody. He has, in fact, been employed in the past when not incarcerated.
>
> The court is directed under the law to consider the reasonable ability of the defendant over the course of his lifetime to meet his Category B financial obligations imposed by judgment entry. On the record before this court that defendant is able-bodied, is not obligated for the support of dependents, has an employment history, has education beyond secondary school and has been able, when allowed a payment plan, to meet his court obligations, the court finds that the defendant has the reasonable ability to pay the Category B restitution set forth hereinabove.

Tesch then filed a second appeal.

On its own motion, our supreme court ordered Tesch to file a statement regarding whether he had the right of appeal from the January 31 restitution order and if the two appeals—the one following his conviction and sentence and the one following the restitution order—should be consolidated.

Without waiting for Tesch's statement, the supreme court consolidated the two appeals. It ordered, "Instead of filing statements to the court regarding the jurisdictional issue, the parties shall address the issue of whether the appellant has a right of appeal from the court's January 31, 2022 restitution order in their

appellate briefs." The supreme court eventually transferred the consolidated appeal to our court.

## II. Discussion.

Tesch raises three issues on appeal, (A) whether substantial evidence supports his conviction, (B) whether the State committed a *Brady* violation that entitles him to a new trial, and (C) a challenge to the district court's determination of his reasonable ability to pay category "B" restitution. We consider each in turn.

### A. Sufficiency of the Evidence.

Tesch claims there is insufficient evidence to support his conviction for third-degree burglary.[4] "We review the sufficiency of the evidence for correction of errors at law." *Crawford*, 972 N.W.2d at 202 (citation omitted). In doing so, "we are highly deferential of the jury's verdict." *Id.* "The jury's verdict binds this court if the verdict is supported by substantial evidence," which "is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted). The State must prove every element beyond a reasonable doubt. *See State v. Williams*, 674 N.W.2d 69, 71 (Iowa 2004).

---

[4] Historically, a defendant had to move for judgment of acquittal to preserve error on a sufficiency claim, but that is no longer necessary. *See State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022) ("A defendant's trial and the imposition of sentence following a guilty verdict are sufficient to preserve error with respect to any challenge to the sufficiency of the evidence raised on direct appeal.").

The State had to prove it was Tesch who entered the storage unit, which was an occupied structure and not open to the public, and that he did so without permission or authority and with the specific intent to commit a theft. *See* Iowa Code §§ 713.1, .6A (2021). Here, Tesch contends the State failed to establish he was the perpetrator, asserting evidence that shoe prints in the snow were similar to the tread on the shoes Tesch was wearing several hours later is insufficient because there was neither evidence Tesch's specific shoes made those prints or that the tread was unique or even uncommon and there was no evidence Tesch's specific gait matched the prints. But, contrary to Tesch's assertion, the shoe prints are not the only evidence tying him to the crime.

The evidence introduced at trial established that the security camera inside the storage unit sent a notification that motion was detected at approximately 3:00 a.m. While about twenty to thirty pounds of things were taken, including thirty-six bottles of butane, a case of "I Love You Roses," and three or four torch lights, the unit was not quickly ransacked. All of the thirty-six butane bottles were removed from their boxes, with the boxes then placed back on the shelf like they were never disturbed. And, according to Madison, Tesch arrived at her door—about a ten-minute walk from the storage units—somewhere around 5:00 or 6:00 a.m., carrying a duffel bag and sweating. Meanwhile, after Jason learned of the early morning motion, he and Officer Molina were at the unit at about 8:00 a.m. Officer Molina testified he was able to follow the set of footprints in the fresh snow from the storage unit up to Madison's front door.[5] He arrived there at approximately noon,

---

[5] The shoe prints did not make a perfectly complete trail; some of the prints were scuffed or disrupted, and there were times the tracks ended when they crossed

but no one responded to his knock. When Officer Molina and fellow officers returned around 6:00 p.m. to execute a search warrant, Madison, Tesch, and a third person were present. While there, Officer Molina noted that Tesch was wearing shoes with a tread that appeared consistent with the shoe prints he followed to the door; when Officer Molina motioned toward the shoes (for the benefit of one of the other officers), Tesch offered up, "You just touched my shoe. These aren't even my shoes, bro. Maddie, did you not just give me these shoes?" When Madison responded by asking what shoes, Tesch responded, "I don't know. That fucking Joe's shoes. Did you not just give me a pair of Joe's shoes?" At that point, the officers had not yet read the warrant; there had been no mention of the burglary or what they may be looking for and no indication shoe prints may be important. During the officers' search, one of the "I Love You Rose" boxes was found in Madison's home. Additionally, at trial, Madison, who was there under subpoena, testified she did not give Tesch the shoes and did not know what he was talking about when he said that. The State introduced into evidence various pictures of the shoe prints along the trail Officer Molina followed and the shoes that were taken from Tesch's feet, allowing the jury to determine whether the tread was consistent.

The State's evidence did not establish Tesch was the only possible actor—no expert opined the shoe prints followed by Officer Molina were definitively made by Tesch specifically or even that the shoes Tesch was later found wearing were

---

cement or other surfaces, causing a break in the trail. Officer Molina testified he was able to pick the trail back up on the other side of these impediments each time until he reached Madison's door.

the exact pair that made the prints. But the State is not required to "discredit every other potential theory to be drawn from circumstantial evidence." *State v. Ernst*, 954 N.W.2d 50, 58 (Iowa 2021). And the jury could infer from Tesch's false claim that the shoes were not his and had just been given to him by Madison that Tesch understood the significance of the shoes at the time when likely only the burglar would have and was attempting to distance himself from the incriminating evidence—a fact the jury could consider as an indication of his guilt. *See State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993) ("Admissions may be implied by the conduct of the defendant subsequent to a crime, including fabrication, when such conduct indicates a consciousness of guilt. A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt and the false story is relevant to show that the defendant fabricated evidence to aid his defense.").

Viewing the evidence in the light most favorable to upholding the conviction, substantial evidence supports Tesch's conviction for third-degree burglary.

**B. Alleged *Brady* violation.**

Tesch alleges that the State committed a *Brady* violation that entitles him to a new trial. Tesch first raised this issue to the district court at the start of the second day of trial, when he asked "to make a record regarding possible *Brady* violations."[6] Tesch argued:

> It appears, based on [Madison's] deposition testimony, that in mid-to late February, 2021, she had contacted the county attorney's office and possibly the Spencer Police Department with the fact that she had found a larger 24-pack box of the "I Love You Rose" glass pipes, that are the only item that was found from this alleged burglary, and that was found in [Joey's] suitcase when [Madison] had her items

---

[6] At that time, Tesch also raised other purported *Brady* violations. He does not re-raise the other claims on appeal.

returned to her from her car that had been involved in a—or an eluding situation with police several days after February 6th, 2021. We weren't provided that information until the depositions, which occurred September 22nd, 2021.

. . . .

. . . The existence of this larger "I Love You Rose" box was known to the State in potentially February or March of 2021. I don't know what information was completely provided to them, but that fact was known to them and that fact was never given to the defendant or, as far as I know, any of his attorneys that have been appointed on this case until depositions on September 22nd. The existence of that box and the fact that the police looked into that, I think, makes that box potentially exculpatory . . . .

The district court did not rule on the alleged *Brady* violation until the sentencing hearing, when it overruled Tesch's motion. In a written ruling filed later, the court found the State did not have knowledge Joey was connected to the recovered box until Madison mentioned it in her September deposition and concluded the prosecutor "cannot be found to have suppressed favorable evidence to [Tesch] when it did not possess that specific knowledge. . . . On this record, there was no suppression of evidence as the complete nature of the evidence was unknown to the State." Tesch maintains the district court was wrong in its determination.

To succeed in establishing a *Brady* violation, Tesch "must prove by a preponderance of the evidence '(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt.'" *DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011) (quoting *Harrington v. State*, 659 N.W.2d 509, 516 (Iowa 2003)). Our review is de novo. *State v. Cahill*, 972 N.W.2d 19, 27 (Iowa 2022) ("Due process claims asserting a *Brady* violation are reviewed de novo.").

The State argues Tesch cannot carry his burden on any of the three prongs. We conclude he fails on the first and do not consider further. Here, the

complained-of evidence was not suppressed because Tesch learned both that Madison recovered the twenty-four-count "I Love You Rose" box and that she found it in a suitcase Joey was using *before* trial. So Tesch was able to, and in fact did, use the evidence in his defense at trial; he even referenced it in his opening statement. *See State v. Bishop*, 387 N.W.2d 554, 559 (Iowa 1986) (concluding due process was not violated when the defendant learned of the evidence during trial); *see also State v. Veal*, 564 N.W.2d 797, 810 (Iowa 1997) ("Evidence is not considered 'suppressed' if the defense is able to take advantage of it at trial."), *declined to follow on other grounds by State v. Hallum*, 585 N.W.2d 249 (Iowa 1998). "A new trial is not mandated because it would involve only evidence already considered by the jury in this trial."[7] *Bishop*, 387 N.W.2d at 559. Therefore, Tesch's *Brady* claim fails.

### C. January 31, 2022 Restitution Order.

Tesch challenges the merits of the district court's reasonable-ability-to-pay determination; he claims the court abused its discretion by considering whether he had the ability to pay the full amount *over his lifetime*. But first, we start with the question of whether Tesch has a right of appeal from the January 31, 2022 restitution order.

---

[7] Tesch does not allege that he had inadequate time to prepare after learning of the evidence more than ten days before trial. And even if he did, Tesch did not request a continuance after learning of the information. *See Bishop*, 387 N.W.2d at 559 (noting the defendant's failure to ask for a continuance after the evidence was produced).

**1. Right of Appeal.**

Tesch argues he has a right of appeal because he requested the ability-to-pay determination at the time of sentencing. He recognizes the court's ruling came out several months later—following a number of continuances—but maintains that due to the timing of his request, the January 31 ruling should "relate back" to his sentencing hearing and be considered part of the final judgment. *See* Iowa Code § 910.3(8) ("The court shall enter a permanent restitution order setting out the amount of restitution including the amount of community service to be performed as restitution and the persons to whom restitution must be paid. *A permanent restitution order entered at the time of sentencing is part of the final judgment of sentence* as defined in section 814.6 *and shall be considered in a properly perfected appeal.*" (emphasis added)). He focuses on the fact that the district court stated it was continuing his restitution hearing on the date of his sentencing and that the court never entered a final restitution order until the January 31 order. *Cf.* Iowa Code § 910.3(9) ("If the full amount of restitution cannot be determined at the time of sentencing, the court shall issue a permanent restitution order setting forth the amount of restitution identified up to that time.").

In response, the State argues that because the January 31 restitution order was entered more than two months after judgment and sentence, Tesch does not have a right of appeal. *See id.* §§ 910.3(10) ("A permanent restitution order may be superseded by subsequent orders if additional or different restitution is ordered. *A permanent restitution order entered after the time of sentencing shall only be challenged pursuant to section 910.7.*" (emphasis added)), .7(5) (requiring appellate review of section 910.7 petitions to be "by writ of certiorari"). The State

maintains that section 910.3(10)'s mandate that "permanent restitution order[s] entered after the time of sentencing *shall only* be challenged pursuant to section 910.7" forecloses Tesch's "relation back" argument. *See also State v. Hawk*, 952 N.W.2d 314, 319 (Iowa 2020) ("Section 910.7 provides the mechanism for addressing restitution not ordered at the time of sentencing . . . ."). We agree with the State; while section 910.2A(3)(a) and (b)[8] seem to suggest some amount of leeway to get a ruling on an offender's reasonable ability to pay before needing to wade into the waters of section 910.7, we think reading those paragraphs to allow for the "relate back" approach Tesch propounds would stand in direct contradiction to the plain language of section 910.3(10) and would result in slow-moving and piecemeal appeals—as occurred here. *See State v. Patterson*, ___N.W.2d ___, ___, 2023 WL 175509, at *4 (Iowa 2023) (concluding section 910.3(8) did not govern when the appeal was not about an order entered at the time of sentencing); *see, e.g.*, *In re T.R.*, 705 N.W.2d 6, 10 (Iowa 2005) ("We have long followed the general policy against piecemeal appeals."); *Davis v. State*, 443 N.W.2d 707, 710 (Iowa 1989) ("One of the goals of our criminal justice system is to afford both the

---

[8] Section 910.2A states, in relevant part:

> 2. If an offender requests that the court determine the amount of category "B" restitution payments the offender is reasonably able to make toward paying the full amount of such restitution, the court shall hold a hearing and make such a determination . . . .
> . . . .
> 3. a. If an offender does not make a request as provided in subsection 2 *at the time of sentencing or within thirty days* after the court issues a permanent restitution order, the court shall order the offender to pay the full amount of category "B" restitution.
> b. *An offender's failure to request a determination* pursuant to this section *waives all future claims* regarding the offender's reasonable ability to pay, *except as provided by section 910.7*.

(Emphasis added.)

accused and the [S]tate fair and prompt trials, appeals and further proceedings to correct error.  A legitimate concern is that the process also end within reasonable time limits.").  As the State argues, concluding this type of later-entered restitution order is part of the judgment and sentence would likely often require the consolidation of appeals.  *Cf.* Iowa R. App. P. 6.101(1)(b) (requiring a notice of appeal to "be filed within 30 days after the filing of the final order or judgment").

Alternatively, if we do not conclude he has a right of appeal, Tesch asks us to treat his appeal as a petition for writ of certiorari and still reach the merits of his claim.  *See Dorsey v. State*, 975 N.W.2d 356, 360 (Iowa 2022) ("[W]hen a case is initiated by a notice of appeal, but another form of review is proper, we need not dismiss the action and may proceed instead as though the proper form of review was requested." (citing Iowa R. App. P. 6.108)).  The State also resists this procedural route, arguing statutory language forbids a review unless Tesch has exhausted his remedies under section 910.7.  *See* Iowa Code § 910.7(4) ("An appellate court shall not review or modify an offender's plan of restitution, restitution plan of payment, or any other issue related to an offender's restitution under this subsection, unless the offender has exhausted the offender's remedies under this section and obtained a ruling from the district court prior to the issue being raised in the appellate courts.").  This is where we part ways with the State. Tesch requested and received a reasonable-ability-to-pay determination.  And in fact, that determination was made after Tesch applied for a section 910.7 hearing in June 2021.  While Tesch verbally requested the determination on the burglary-case restitution at his sentencing hearing, the court ultimately combined it with the eight other cases receiving an ability-to-pay determination.  Under these facts,

Tesch exhausted his remedies. *See Patterson*, 2023 WL 175509, at *4 n.5. So, we treat his appeal as a petition for writ of certiorari and grant the petition. *See id.* at *5.

### 2. Merits.

Tesch challenges the total amount of category "B" restitution ordered, arguing it was improper for the district court to consider whether he could pay it over his lifetime. We review for an abuse of discretion. *Hawk*, 952 N.W.2d at 320 (reviewing district court's determination of amount offender was reasonably able to pay for an abuse of discretion). Tesch argues that nothing in section 910.2A requires the court to consider the restitution debt in reference to the offender's possible lifetime earnings. And he points us to his June 2021 financial affidavit that claimed he already owed $66,274 in existing court debt while earning only $100 per month.

Here, from the court's written order, it seems it considered the proper factors and did not consider any improper facts.[9] *See State v. Albright*, 925 N.W.2d 144, 161 (Iowa 2019) (identifying as factors "the financial resources of the defendant, including income and net assets, and the defendant's financial obligations, including the amount necessary to meet minimum basic human needs such as food, shelter, and clothing for the defendant and his or her dependents" as well as "the present and potential future financial needs and earning ability of the

---

[9] The court incorrectly stated Tesch is forty-two years old instead of his true age of thirty-four at the time. Also, the court and the State both incorrectly stated that Tesch has an education beyond secondary school. We recognize these errors, but Tesch does have a high school equivalency certificate (HiSET) and no health issues that prohibited him from employment once he is no longer incarcerated.

defendant and his or her dependents, and other factors as the court deems appropriate" (citation omitted)), *abrogated on other grounds by Crawford*, 972 N.W.2d at 198. While Tesch points out that the relevant statutes do not require the court to take such a long view, he has not provided any case law or statute that prohibits it. And he has the burden to establish the court abused its discretion. *See* Iowa Code § 910.2A(1) ("An offender is presumed to have the reasonable ability to make restitution payments for the full amount of category 'B' restitution."), (5) ("A court that makes a determination under this section is presumed to have properly exercised its discretion. A court is not required to state its reasons for making a determination.").

We cannot say the district court abused its discretion in determining Tesch's reasonable ability to pay the category "B" restitution; we annul the writ.

**III. Conclusion.**

Because substantial evidence supports Tesch's conviction and the State did not commit a *Brady* violation, we affirm Tesch's conviction. We conclude Tesch does not have the right of appeal from the court's January 31, 2022 restitution order, but we treat his appeal as a petition for writ of certiorari and grant the petition. After reviewing the merits of his restitution claim, we cannot find the district court abused its discretion, so we annul the writ.

**CONVICTION AFFIRMED; WRIT ANNULLED.**